Haynes, J.
This case is here upon a petition in error. It has been here once before, and is reported in 14 C.' C. R., 302, Bulletin, March 15, 1897. The case went back to the court of common pleas fora new trial, and was tried again, and now comes back the second time, the lower court having followed the opinion of the circuit court in .regard to certain points, and charging anew on some other- points.
The testimony as set forth in the record, shows that Schmidt was in possession of the premises under a lease from the plaintiffs for a year. Near the close of that year, *234 certain matters transpired between the parties. Schmidt claimed that while he had agreed by the lease to pay $600 per annum, in fact he was to pay only $550. As the lease was approaching its completion, a new lease was written for another year, which was sent to him, and he declined to sign it. On or about the 31st of August, 1893, he wrote to Pomeroy & Son a letter, in which he said, “In looking over my lease I find it reads for one year. Under your present conditions I do not wish to renew the same for one year, but will rent by the month.’’ The next morning Pomeroy & Son answered him as follows:
“The owners of the Law Building decline your proposition. If it will be any convenience to you, we will renew your lease until April or May, ’94, but otherwise they wish the contract fulfilled as it stands. They do not see any great excuse for your arrears of rent, and request a settlement without delay.’’
That' is all that occurred between the plaintiff and the defendant prior to the expiration of the written lease, and Schmidt continued to hold possession of the premises, and paid rent at the rate of $50 a month. He continued in possession of the premises down to about the 15th of March, the next spring — 1895, and on the 1st of March he wrote a letter as follows:
“George E. Pomeroy & Son,
“Gentlemen — I hereby notify you that I will vacate room No. 310 Superior street, by March 31st, 1895.’’
No attention was paid to that letter, and on the 30th of March he wrote to them, enclosing the key in the letter, and putting it through the door of the office room, where it was found in the morning. His letter was as follows:
“Mess. Geo.E.Pomeroy & Son:
“Dear Sirs: — Herewith I hand you the keys to your room 310 Superior street, wtiich I have this day vacated. Mr. Brumback tells me that he has arranged with you to leave *235 tbe wire screen partitions belonging tojj The Mutual Aid Building & Loan Company, in the room until such time as you may notify the company to take them out. Any arrangement you have made with Mr. Brumback does not concern me in any manner.
The key was passed over io the janitor, and in a short time afterwards, the testimony shows, there was placed in the window a notice for rent, but no rental was made of the premises. At the close of the month of April, a demand was made upon Schmidt by the plaintiffs for a month’s rent, which was not paid. At the expiration of the month of May, on the 1st of June, a demand was again made for that rent, and in addition for $50, May rent, etc,, and that was not paid, and thereupon suit was brought for two months rent, and subsequently another suit was brought, and the two consolidated, for rent down to the 1st of September, which was the close of the year. This testimony was offered, most of it subject to the exception of defend ant’s attorneys, and at the conclusion of the trial the court submitted to the jury the question which is stated as follows:
“The defendant claims that he held possession of this property as a tenant of the plaintiffs until the 1st of September, 1895; but his contention is,that he did not holdover under the terms of the written lease from year to year, after the expiration of that lease on the 1st day of September., 1893. And the burden is upon the defendant in this case to show, by a preponderance of the evidence, that there was a change in the tenancy after the expiration of the written lease on September 1st, 1893, or at that time. When a tenant, with the consent of his. landlord, express or implied, holds over his term, the law implies a continuation of the original tenancy upon the same terms and conditions, in the absence of any other contract or agreement between tbe parties. *236 The fact of holding over after the expiration of the written lease, and entering upon another year, raises the presumption that such holding over is in accordance with the terms of the written lease, or former tenancy; and where the term of the former tenancy is one year, as it was in this case, if there is no other contract or agreement or understanding between the parties, the tenant is held for another year, at the same rent that he was theretofore paying. This presumption, which the law raises in the case, is one that may be rebutted by proving the real contract or understanding, if there was one. ’’
The matter seems to have been submitted by the court upon the theory that the defendant having said that he would not hold under that contract or agree to the terms of ■,the former lease, that that terminated the lease entirely, .and he became perhaps a tenant from month to month or ¡some shorter term, and that he had a right to leave at any time he saw fit to do so; and the question is, whether that was error on the part of the court.
It is well established in Ohio, we think; it is well' established by the terms of the law generally in other states; it is the common law of England, as we understand it, where ¡a party is in possession of premises for a year under a •written lease, and holds over,if the landlord recognizes that bolding over by receiving rent of him, that that creates a ¡new tenancy for another year,or from year to year,and that tenancy is to be terminated only by a written notice by either party at or near the expiration of the lease. At common law six months notice was required. We had that question before us at the last term. A majority of the court held that it was sufficient to give only reasonable notice. It is held by the supreme court of this state in the case of Armstrong v. Kattenhorn, 11 Ohio, 272, that where a party being in possession of premises under a lease, in order to make a new contract that shall be binding between the par *237 ties, that contract, under the statute of frauds, must be in writing, or if it is a verbal contract, that there must be such a.change of possession referable to that new contract as will take the case out of the statute of frauds. The last reference to that case that I know of in the reports of this state is in 45 Ohio St., 543 — the case of Myers v. Crosswell. There is a discussion there of the law in regard to the statute of frauds and the part performance necessary to take the case out of the statute. At page 548, quoting from Pomeroy on Specific Performance of Contracts, the court say:
“A plaintiff cannot, in the face of the statute prove a verbal contract by parol evidence and then show that it has been partly performed. This course of proceeding would be a virtual repeal of the statute. He must first prove acts done by himself on his behalf which point unmistakably to a contract between himself and the defendant, which cannot, in the ordinary course of human conduct be accounted for in any other manner than as having been done in pursuance of a contract, and which could not have been done without an existing contract; and although these acts of part performance cannot of themselves indicate all the terms of the agreement sought to be enforced, they must be" consistent with it and in conformity with its provisions when these shall have been shown by the .subsequent parol evidence. It follows from this invariable' rule, that acts which do not unmistakably point to a contract existing between the parties, or which' can be reasonably accounted for in some other manner than as having been done in pursuance of a contract do not constitute a part performance “ufficient in any case to tako it out of the operation of the statute, even though a verbal agreement has actually been made between the parties.
“In this state it has been held that ‘if possession be relied upon it must be clearly referable to the contract, and be delivered and held in performance of it. Possession must givé the contract life, and if they can possibly be separated the parol agreement perishes under the operation of the statute. Hence, if the possession can be referred to any *238 other source than the parol contract which it is claimed to support, even to the wrongful act of the party in possession or to a different contract the statute applies.’
The testimony clearly shows that the defendant was in possession under a written lease. He refused to sign a new lease for the reason that he was not satisfied with its terms. He wrote letter to the other parties, saying that he would hold from month to month, and stated that orally, perhaps to the agent. The parties themselves, instead of consenting to that, answered that they would not consent. So that we have the terms, so far as any writing is concerned. We have a proposition to hold on differnet terms, with a refusal on the part of the landlord, and under that state of facts the defendant continued in possession.. There was no change in possession, nor did the landlord in any manner or form reorganize that there was a holding over under different terms than those of the lease. We see no reason whatever why the statute of frauds does not apply here and we think that all the evidence in regard to the statements made by the defendant as to how he would hold or in what manner was entirely irrelevant and illegal.
The rule of law is — it is said that the presumption of law is, that he holds under the .former contract from year to year. The language is varied by different courts in delivering the opinions: by some it is said to be a “presumption,” by some it is said to be an “implied contract,” and by some it is said to be a “constructive contract;” but no matter what it is called the law clearly is, that where the party has continued in possession after the termination of a year’s lease and the landlord has accepted rent from him, that the lessee holds for another year, and that the same is as binding and obligatory upon both parties, as it would be if re-executed. The landlord cannot evade it only at the expiration of the year, nor can the tenant leave possession of the premises. He is likewise bound to pay rent for the *239 year. If he chooses to leave the premises, his obligation still remains to pay. It is a binding contract. That contract can only be set aside in some manner that hás reference to the law of the land. There are two and perhaps three ways in which it can be set aside: a new contract may be made,and there may be a surrender of the premises; but the new contract, in order to be binding, must be either a contract in writing under the statute of frauds, or it must be, if a parol contract, in pursuance of a change of possession, as the supreme court has said, which makes a new and binding contract,
It is said that there was a surrender of the premises. I should say here at the outset that no surrender was pleaded whatever. Two defenses only were set up in the pleadings ■ — one that there was a contract from month to month, and another that there was a new contract made as a settlement of some suit that was pending,and that at the expiration of the time the defendant went out and the landlord took possession of the premises, and gave notice of a desire to rent them. The court says:
“The question as to whether there was a surrender of the premises by the defendant to the plaintiffs, and an acceptance of that surrender by the plaintiffs, has been discussed in argument, with reference to the evidence in the case. If a tenant voluntarily abandons premises during the term without the authority of the landlord, or sufficient cause, he is not relieved from the payment of rent. The landlord may take possession and re-rent, and credit the first lessee with the proceeds which he may receive by re-renting the property; but if the landlord consents to the abandonment, or if the abandonment is for sufficient cause, the tenant will be" discharged from its payment. It is claimed in this case, on the part of the plaintiffs, that when Mr. Schmitt abandoned the room, moved out of'it, and sent the key to the agent of the plaintiffs, he simply abandoned the room; that he did it without the consent of'the plaintiffs, and that they were not, bound, or their rights were not affected by his ac *240 tion in the matter. The plaintiffs’ rights are [not affected by such abandonment unless he consented to the abandonment. A surrender of the tenant, a turning over of his estate to the. landlord,cannot be done by the tenant without the acquiescence of the landlord. A surrender must be by agreement. The minds of the parties must meet, or they must so conduct themselves as that they are held to a meeting. It is essential to a surrender that there be an acceptance of, a surrender of, the interest. A leasehold interest in property cannot be one sided. And you. must deT termine from the evidence in this case what the facts are with reference to this branch of the case, if you come to a consideration of this branch of the case.”
As I have said, there was no surrender pleaded — no issue made upon that. The matter was submitted to the court, and went to the jury under this part of the charge that I have read. We said in deciding this case before, that a writing was not necessary for the surrender of the premises. This arises from a peculiar formation of the statute of frauds. In England the statute was in substance that there should be no grant of any premises by way of lease,nor surrender, except it was in writing, and the surrender had to be accompanied with the same formalities in regard to making it a written contract that the grant was, The language of the statute in this state is, that there shall be no grant of a lease, and the word “surrender” is- left out entirely. So that there may be a surrender by parol, but that surrender must be a surrender in fact, and not an agreement to-surrender. • An agreement to surrender must be in writing in order to be valid. Under the section (4199) of the statute of frauds which requires that a contract in regard to land must be in writing,an agreement to make a future surrender must be in writing; but an oral agreement to surrender, accompanied by an actual possession, as a termination of the contract-of lease, accepted by the grantor, would take the contract out of the statute and be valid asa surrender. *241 On evidence of this branch of the case I shall have nothing to say,except that the tenant abandoned these premises, and went off and left them, saying to the landlord “I won’t have anything further to do .with them.” He takes the key and puts it in a letter, and leaves it in the office of the agent- — -in fact, left it in the door of the office. Mr. Pomeroy, as agent of the landlord, took it and handed it over to the janitor, and subsequently put in the window a notice to rent; but nowhere did he accept the surrender of the premises. The landlord held the tenant for the rent, demanded the rent,and then demanded it again, and when refusal was had, he commenced an action. It is said he did not commence until 60 days after the termination of the year: he had six years in which to commence an action,if he had a cause of action, under the statute of limitations. What was the duty of the landlord ? Was it not to take care of the premises?
G. W. Everett, for Plaintiffs Error.
Hurd, Brumback & Thatcher, for Defendant in Error.
The tenant had gone and left them. It was perfectly proper for the landlord to offer the premises for rent, and if he rented them — got anything for them — to credit the tenant. The fact that the key was left does not amount to anything, or tend to prove anything.
We think the court erred in submitting these two propositions to the jury. We think it would have been proper for the court at the termination of the evidence to have directed a verdict for the plaintiffs. We think the evidence should have been ruled out. We think there is no defense upon the testimony offered to the claim of the plaintiffs for this rent.
The judgment of the Court of Common Pleas is reversed.